IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CRISTIANO DINIZ and ANTONIO THOMAS, individually and on behalf of all those similarly situated,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>ALPHA OB GYN GROUP, P.C. and DR. DANIEL E. MCBRAYER, SR.,<br><br>　　　　Defendants. | FILED IN CHAMBERS<br>U.S.D.C. - Atlanta<br><br>SEP 14 2015<br><br>James N. Hatten, Clerk<br>By: C. Bankhead<br>　　　Deputy Clerk<br><br>CIVIL ACTION NO.<br>1:12-CV-02621-LMM |

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees [103]. After a review of the record and due consideration, the Court enters the following Order.

Plaintiff Diniz initiated this class action on behalf of himself and all other similarly situated employees of Defendants on July 27, 2012, asserting that Defendants had violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") by failing to provide employees who worked more than 40 hours per week with overtime pay as required by 29 U.S.C. § 207. Dkt. No. [1]. Plaintiff Thomas thereafter opted in to the action as a party plaintiff on July 31, 2012. Dkt. No. [3]. Plaintiffs amended their complaint to bring a retaliation claim against Defendants on August 13, 2012, following Plaintiff Thomas's termination from employment and an alleged threat against Plaintiff Diniz that he, too, would be

terminated from employment with Defendants if he chose to go forward with the lawsuit. Dkt. No. [8]. Plaintiff Diniz was indeed terminated from his employment on August 29, 2012, and Plaintiffs amended their retaliation claim to include that action by Defendants. Dkt. No. [13]. Victoria Cherry opted in to the action as a party plaintiff on July 17, 2013, Dkt. No. [41], but later withdrew her opt-in notice on February 26, 2015. Dkt. No. [83]. Following Plaintiff Cherry's decision to opt out, Plaintiffs amended their pretrial order to reflect their intention to pursue only their retaliation claims at trial and to abandon their claims based on Defendants' alleged failure to provide fair overtime compensation. Dkt. No. [91]. The parties entered into a settlement agreement disposing of Plaintiffs' claims and filed the same with the Court for approval on June 17, 2015. Dkt. No. [100]. The settlement agreement set forth that Plaintiff Diniz would receive $12,000.00, and Plaintiff Thomas would receive $8,000.00 in compensation and liquidated damages from Defendants. Dkt. No. [100-1] at 2.

Plaintiffs filed the instant motion on June 23, 2015, seeking $131,950.00 in attorneys' fees and $9,059.60 in litigation expenses. Dkt. No. [103-1] at 22. Defendants responded on July 7, 2015 objecting to the award of any attorneys' fees "for the time Plaintiffs' attorneys spent on the overtime cause of action which was abandoned before trial," Dkt. No. [104] at 5, and also objecting to reimbursement for any time Plaintiffs' attorneys "spent preparing for and defending a Georgia Department of Labor unemployment claim [that] Plaintiff Diniz lost." Id. at 7. Additionally, Defendants objected that "Plaintiffs are not

2

entitled to a double-dip" with regard to the Plaintiffs' attorneys' fees already paid by Defendants as a result of discovery sanctions. Id. Ultimately, Defendants argue that "Plaintiffs are entitled to no more tha[n] 20% of their request less the amounts already paid." Id. at 8. Plaintiffs filed a Reply Memorandum on July 13, 2015, Dkt. No. [105], asserting that Plaintiffs "succeeded on all of their claims" due to the settlement agreement between the parties that contained a release of all wage-related claims by the Plaintiffs, id. at 2, and that even if the Court agrees that Plaintiffs were not successful on all of their FLSA claims, their retaliation claims are "inextricably intertwined with" their overtime claims, and thus the pretrial and trial preparations that Plaintiffs' attorneys devoted to the litigation would have been the same "even had Plaintiffs asserted only their retaliation claims." Id. at 2-3.

There is no disagreement among the parties as to whether Plaintiffs are entitled to some attorneys' fees. Defendants and Plaintiffs included a provision in their settlement agreement agreeing "that Plaintiffs shall be entitled to attorneys' fees and costs in connection with their prosecution of this Action" upon entry of a motion for such fees and costs to the Court. Dkt. No. [100-1] at 2. Defendants further acknowledge in their response to Plaintiffs' Motion for Attorneys' Fees that "under prevailing law, Plaintiffs are the prevailing parties and are thus entitled to reasonable attorney's fees." Dkt. No. [104] at 2-3. The only dispute to be resolved by the Court is the amount of attorneys' fees and costs that "constitutes a reasonable amount, if any." Dkt. No. [100-1] at 2.

3

> In calculating a reasonable award of attorneys' fees, a district court must first calculate the "lodestar" amount—the number of hours reasonably expended multiplied by a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The district court is "itself an expert" on the reasonableness of hourly rates and may consider its own knowledge and experience on the topic. Further, the fee applicant must provide the district court with detailed evidence about the reasonable hourly rate, as well as records to show the time spent on the different claims and the general subject matter of the time expenditures set out with particularity. In addition, a well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

Dial HD, Inc. v. ClearOne Commc'ns, 536 F. App'x 927, 930-31 (11th Cir. 2013) (internal quotations and citations omitted).

First, the Court finds that Plaintiffs' request for litigation expenses is reasonable. Defendants do not object to the $9,059.60 in expenses requested in Plaintiffs' motion. See generally Dkt. No. [104].[1] The Court has also independently reviewed Plaintiffs' litigation expenses, and finds that the amount of $9,059.60 is reasonable.

Second, the Court finds that Plaintiffs' request for attorneys' fees is reasonable in most respects. Plaintiffs' attorneys have properly supported their

---

[1] The Court notes Defendants' assertion that they have already reimbursed Plaintiffs in the amount of $150.00 for cancelled depositions, and that "Plaintiffs are not entitled to a double-dip." Dkt. No. [104] at 7. In actuality, Defendants were ordered to pay a total of $300.00 in court reporter fees for cancelled depositions ($150.00 to each court reporter). Dkt. No. [36]. Regardless, the court reporter fees Defendants were ordered to pay to Plaintiffs are not included in Plaintiffs' itemized billing memorandum attached to the instant motion, and accordingly the Court will not treat Defendants' reference to that reimbursement as an objection to the $9,059.60 in litigation expenses enumerated and sought by Plaintiffs.

4

fee request with an itemized billing memorandum and declarations for the Court's review. Dkt. Nos. [103-2], [103-3], [103-4]. The Declaration of Andrew Weiner establishes that he billed a total of 282.4 hours on this case. Dkt. No. [103-3] at 2. The Declaration of Jeffrey Sand establishes that he billed a total of 94.6 hours, Dkt. No. [103-4] at 2, for a total of 377 hours billed by Plaintiffs' attorneys.[2] The itemized billing memorandum establishes that Mr. Weiner worked on this case over the course of three years, and that Mr. Sand worked on this case over the course of eight months. See generally Dkt. No. [103-2].

The Court has already found that Plaintiffs' attorneys' billing rate of $350.00 is "reasonable for two Atlanta employment law attorneys, each with six and ten years experience respectively." Dkt. No. [77] at 2. The Court also finds that Plaintiffs' attorneys mitigated their fees by not billing for work done by paralegals, legal secretaries, or any other staff members, see generally Dkt. No. [103-2], or any of the time spent a) by Plaintiffs' attorney Jeffrey Sand familiarizing himself with the case; b) by Plaintiffs' attorneys preparing motions for sanctions and attorneys' fees that were already awarded; c) by Plaintiffs' attorneys regarding Plaintiff Victoria Cherry, who opted out before the settlement

---

[2] The Court notes that Defendants have faced sanctions multiple times throughout the course of this litigation and greatly prolonged the discovery process by forcing Plaintiffs to bring motions to compel three separate times. See Dkt. Nos. [23], [28], [32], [34], [36]. While the Court does not accept Plaintiffs' suggestion that Defendants had any obligation to engage in settlement discussions or agree to settlement offers, they nevertheless did contribute to the circumstances that necessitated the time spent by Plaintiffs' attorneys in litigating this action.

5

agreement was reached; or d) by Plaintiffs' attorneys in internal conferences throughout litigation. Dkt. No. [103-1] at 10-11, n.1.

Defendants argue that Plaintiffs "totally abandoned their initial claim of failure to pay overtime" after Plaintiff Cherry withdrew her opt-in notice, Dkt. No. [104] at 5. They assert that the lodestar should be adjusted accordingly to treat all hours billed by Plaintiffs' attorneys in pursuit of the overtime claims as hours "not expended in pursuit of the ultimate result achieved" and thus not properly recoverable under Hensley. Id. at 6. Defendants also argue that Plaintiffs' attorneys' fees that were incurred in connection with Plaintiffs' unemployment claim before the Department of Labor are not properly compensable.

Plaintiffs assert three reasons why the Court should not adjust the lodestar downward:

> First, Plaintiffs succeeded on all of their claims. Second, even if Plaintiffs did not succeed on all of their claims, they are not required to do so to recover all of their attorney's fees and costs. Third, Defendants' suggested methodology of dissecting Plaintiffs' attorneys' fees is so flawed that the Court must reject it.

Dkt. No. [105] at 5. The Court disagrees with Plaintiffs' first averment but is persuaded in part by their second. Plaintiffs abandoned their overtime claims, but the hours of work dedicated by Plaintiffs' attorneys in pursuit of both their overtime and retaliation claims cannot be cleanly divided. The Court further declines to adopt Defendants' suggested methodology for determining the appropriate attorneys' fees award.

6

Plaintiffs argue that they "obtained relief with respect to all of their claims," Dkt. No. [105] at 5, for two reasons. First, because the settlement agreement reached between the parties "includes a release of all of Plaintiffs' claims in this action, and not solely their retaliation claims," Plaintiffs assert they should be considered the prevailing parties on both their overtime and retaliation claims. Id. at 6. Second, because "Defendants paid Plaintiffs and several other employees their unpaid overtime compensation only after Plaintiffs filed this lawsuit," Plaintiffs argue the results they achieved should be considered fully successful. Id.

Both of Plaintiffs' arguments are unavailing. First, the Court acknowledges that the settlement agreement between Plaintiffs and Defendants was approved by this Court and may thus serve as the basis for an award of attorneys' fees. Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001). However, that settlement agreement provided, in part, "Plaintiff Diniz shall receive from Defendants *with respect to the claims asserted in the Action* $12,000.00. . . . Plaintiff Thomas shall receive from Defendants *with respect to the claims asserted in the Action* $8,000.00." Dkt. No. [100-1] at 3 (emphasis added). Plaintiffs filed an amended pretrial order on February 26, 2015 indicating that they no longer had any intention of pursuing their overtime claims. Dkt. No. [91] at 6.

Federal Rule of Civil Procedure 16 (d) dictates that the pretrial order "controls the course of the action unless the court modifies it." Guided by a

7

previous version of that Rule, the Eleventh Circuit has made clear that claims not included in a party's pretrial order should be treated as abandoned by that party. See Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1462 (11th Cir. 1998). There, the Eleventh Circuit affirmed a district court's ruling that a plaintiff abandoned his § 1981(a) claim by virtue of his failure to include it in his pretrial stipulation, despite the fact that plaintiff *did* include in the pretrial order a Title VII claim embodied in 42 U.S.C. § 1981a. While acknowledging "the potential confusion for plaintiffs in differentiating between . . . 42 U.S.C. § 1981a and the cause of action created by 42 U.S.C. § 1981(a)," the Court nevertheless treated the § 1981(a) claim as abandoned because "[a]s observed by the district court, the pretrial stipulation does not reference § 1981(a) at any point. . . . While we are reluctant to engage in an overly technical reading of a pleading when the dispositive factor is the apparent absence of a set of parentheses, these parentheses unfortunately control our decision." Id.

  Plaintiffs cannot be considered the prevailing parties on abandoned claims, even if the settlement agreement bars them from bringing such claims again. The Court notes that the same agreement also bars Plaintiffs from bringing "any and all other FLSA or wage-related claims or disputes that . . . *could have been made* by or on behalf of Plaintiffs against Defendants relating to conduct or events occurring at any time prior to and including the date on which this Agreement is executed." Dkt. No. [100-1] at 4 (emphasis added). Surely Plaintiffs would not contend that they are the prevailing parties on any and all claims that they could

8

have brought but did not actually bring, regardless of whether they are bound not to bring such claims in the future.

Plaintiffs' second argument fails as well, because the term "prevailing party" does not include a "party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 600 (2001).[3] Unless payment of overtime compensation by Defendants after litigation began could be construed as an offer of settlement, offer of judgment, or admission of liability, Defendants' tendering of that money to Plaintiffs and other employees who were potential plaintiffs is best viewed as an effort to moot Plaintiffs' and other potential claims, rather than as evidence that Plaintiffs *prevailed* on those claims for the purpose of being

---

[3] While Buckhannon involved FHAA and ADA claims rather than FLSA claims, the Eleventh Circuit explicitly repudiated the "catalyst" test that is suggested by Plaintiffs' argument here in an FLSA case, relying on the Supreme Court's rationale in Buckhannon. See Dionne v. Floormasters Enterprises, Inc., 667 F.3d 1199, 1203 (11th Cir. 2012) ("[Plaintiff] maintains that he is entitled to attorney's fees and costs as a prevailing party because the filing of his complaint brought about the payment by [Defendant] of the amount of money he requested. This argument is apparently based on the 'catalyst' test that was previously used in this Circuit to determine if a party had prevailed in a lawsuit. . . . Under the catalyst test, a plaintiff should be found as prevailing if its ends are accomplished as the result of the litigation even without formal judicial recognition, there is a causal connection between the plaintiff's lawsuit and the defendant's actions providing relief to the plaintiff, and the defendant's actions were required by law. In [Buckhannon], the Supreme Court rejected the catalyst theory." (Internal citations and quotations omitted.)).

9

awarded attorneys' fees under FLSA. See, e.g., Bilbao v. Bros. Produce Inc., No. 13-20535-CIV, 2013 WL 1914406, at *2 (S.D. Fla. May 8, 2013) (addressing a similar fact pattern and holding that "Plaintiff's claims were mooted the moment [Defendants] tendered payment for the full damages that Plaintiff could recover under his claim . . . and . . . Plaintiff is not a 'prevailing party' for the purpose of being awarded attorneys fees under the FLSA's fee-shifting provision.").

Plaintiffs next argue that even if they did not succeed on all of their claims, they are not required to do so to recover all of their attorneys' fees and costs. Plaintiffs rely on Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984) for this contention. Dkt. No. [103-1] at 19. Carmichael contains the directive that "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. *But the court should not disallow hours that were related and necessary to the successful claims.*" 738 F.2d 1126 at 1137 (quoting Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) (emphasis added)). Plaintiffs argue that the Court would be in violation of the principles set forth above if the Court reduced Plaintiffs' itemized hours "based on the failure of some claims where those claims arose from the same course of conduct as the successful claim." Dkt. No. [103-1] at 19. The Court agrees. As the Eleventh Circuit explains in Carmichael:

> In the present case, the plaintiff had to develop fully the facts concerning his employment for the court to be able to evaluate his contentions; thus, even if only the wage claim were ultimately successful, the time spent developing facts concerning the hiring and

> promotion claims would be compensable if these facts were also probative on the wage claim.

738 F.2d 1126 at 1137. Here, the retaliation claim brought by Plaintiffs required them to show that Defendants "discharge[d] or in any other manner discriminate[d] against [Plaintiffs] because [Plaintiffs] ha[ve] filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Moreover, Plaintiffs' conduct in bringing an FLSA complaint seeking unpaid overtime compensation is not automatically protected activity under the Act, as this Court has explained:

> As under Title VII and other employment discrimination statutes, the complaining employee [under FLSA] must have an objectively reasonable, good-faith belief that the employer's conduct is unlawful: "It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he subjectively (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was objectively reasonable in light of the facts and record presented. It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable."

Burnette v. Northside Hosp., 342 F. Supp. 2d 1128, 1134 (N.D. Ga. 2004) (quoting Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 960 (11th Cir. 1997)). In order to succeed on the retaliation claims at trial, then, Plaintiffs were required to establish the same facts that would have supported their abandoned overtime claims. No such showing could have been made without Plaintiffs' attorneys' prior legal work on Plaintiffs' overtime claims.

11

Plaintiffs' overtime and retaliation claims cannot easily be disentangled, and much of the work done by Plaintiffs' attorneys throughout the litigation pertained to both claims at once. The Supreme Court's guidance in <u>Hensley v. Eckerhart</u> is enlightening in this regard:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved.". . . [N]o fee may be awarded for services on the unsuccessful claim.
>
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

461 U.S. at 434-35 (citation omitted). Here, Plaintiffs' claims "involve a common core of facts," <u>id.</u> at 435, and the hours billed by Plaintiffs' attorneys were spent pursuing both Plaintiffs' overtime and retaliation claims at once.

Defendants point out that much of the space devoted by Plaintiffs in their pleadings and the time devoted by Plaintiffs in their depositions pertained to Plaintiffs' overtime claims and not their retaliation claims. Dkt. No. [104] at 7. They ask that Plaintiffs' attorneys' fees be reduced according precisely to the time

and space taken up by Plaintiffs' overtime claims.4 Id. at 2. Defendants misunderstand the law. See, e.g., Dowdell v. City of Apopka, 698 F.2d 1181, 1187 (11th Cir. 1983) ("The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit."). For the reasons discussed above, this Court will not dissect the pleadings, written discovery, and depositions completed by Plaintiffs' attorneys over the course of this litigation into precise percentages of time spent on one claim versus another. Such an approach unreasonably and artificially separates Plaintiffs' claims into "a series of discrete claims" despite the fact that they "involve a common core of facts." Hensley, 461 U.S. at 435.5

---

4 Defendants attached to their reply to the instant motion a thorough statistical analysis they conducted of "the pleadings, written discovery, and all depositions taken by Plaintiffs to determine percentages of work and time attributed to general and retaliation matters not including any overtime matters or issues." Dkt. No. [104-1] at 2. Defendants' analysis concluded that "Plaintiffs' legal fees on the retaliation claims appear to comprise approximately 15.3% of the pleadings, 14% of the discovery, 14.3% of the Loner deposition, 28.6% of the Griffith deposition, 30.4% of the Buckner deposition, [etc.]" Dkt. No. [104] at 7. Defendants request that the Court reduce Plaintiffs' attorneys' fees according to this analysis.

5 The Court notes that even if it were to take such an excisional approach, Defendants' proposed methodology is seriously flawed. For instance, Defendants assert that Plaintiffs dedicated "168.59" questions to retaliation during Dr. Daniel McBrayer's deposition (Volume III). They then determine that the deposition contained "513 total questions" based on an extrapolation from the number of questions contained in the first 15 pages. Dividing 513 by 168.59, they determine that only 32.8% of the deposition was related to retaliation (inclusive of general background questions). They then apply that percentage—supposedly reflective of the amount of *total space in a written transcript* taken up by retaliation questions—to the amount of *total time* that the deposition required, concluding that 31.5 minutes were spent on questions about retaliation (32.8% of 96

13

Defendants also aver that Plaintiffs' attorneys should not receive "reimbursement for time spent preparing for and defending a Georgia Department of Labor unemployment claim [that] Plaintiff Diniz lost." Dkt. No. [104] at 7. The Court agrees. The time spent preparing for the unemployment appeal hearing is easily separable from the time spent by Plaintiffs' attorneys in the present action. Indeed, Plaintiffs' attorneys clearly identify time spent on the unemployment appeal separately from their other work on this case in their itemized billing memorandum. Dkt. No. [103-2] at 4, 5, 6. <u>Hensley</u> makes clear that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." 461 U.S. at 440. Plaintiff Diniz's unemployment appeal hearing before the Georgia Department of Labor is distinct in all respects from Plaintiffs' successful

---

minutes). Dkt. No. [104-1] at 5. All of the depositions are "analyzed" in this way to reduce Plaintiffs' attorneys' billed hours. Defendants haphazardly apply the same approach to Plaintiffs' pleadings and discovery, asserting, for example, that 15.3% of Plaintiffs' pleadings were dedicated to retaliation and 31.4% were dedicated to "General." <u>Id.</u> at 4. Seemingly overlooking the latter part of this particular analysis, Defendants assert in their brief that "Plaintiffs' legal fees on the retaliation claims [inclusive of] *information that could reasonably be included in any claim and is not strictly retaliation related* appear to comprise approximately 15.3% of the pleadings." Dkt. No. [104] at 7, n.2 (emphasis added). It is unclear how precisely 59% of a question in a deposition could be dedicated to retaliation, or why the percentage of Plaintiffs' pleadings determined to be "general" should be entirely discounted when calculating a reasonable attorneys' fees award. Perhaps unsurprisingly, Defendants cite to no authority in support of their approach and do not purport to have relied on statisticians or any other experts in preparing their analysis. <u>See</u> Dkt. No. [104-1] at 3 ("A statistical analysis was conducted by my office and me.").

14

retaliation claims under FLSA in this case. The Court therefore subtracts Plaintiffs' attorneys' fees for all work done in relation to that hearing ($1,855.00).

Finally, the Court finds that Plaintiffs are not seeking a "double-dip" of attorneys' fees already paid as a result of discovery sanctions against Defendants. In calculating their request for attorneys' fees, Plaintiffs' attorneys submit in their motion that "they have excluded from the request time associated with certain activities," Dkt. No. [103-1] at 10, including "all time incurred with respect to . . . Plaintiffs' various motions for sanctions due to Defendants' discovery abuses (motions which the Court granted over the last three years and awarded Plaintiffs their fees)." Id. at 10-11, n.1.

The itemized billing memorandum attached as Exhibit A to the instant motion, Dkt. No. [103-2], confirms Plaintiffs' assertion that they excluded all time their attorneys incurred preparing motions for sanctions against Defendants, with the exception of a motion for sanctions filed on May 22, 2015. Dkt. No. [103-2] at 11. That motion involved Defendants' failure to disclose to Plaintiffs the existence of certain witness statements made in August of 2012. The Court already resolved by telephone conference with the parties on May 22, 2015 that Defendants would be liable for Plaintiffs' attorneys' fees associated with the preparation of that motion. Because those fees have yet to be paid, Plaintiffs' attorneys do not gain a duplicative benefit by their inclusion in the Court's calculation of a reasonable award of attorneys' fees now.

15

After careful review of the itemized billing memorandum, the Court finds it plainly established that Plaintiffs took special care not to seek attorneys' fees already awarded in conjunction with any previously granted motions for sanctions against Defendants. Thus, the Court finds that Defendants' argument that "Plaintiffs are not entitled to a double-dip" bears no relation to the attorneys' fees actually sought by Plaintiffs and is therefore without merit.

In light of the work completed in this case, the Court finds that Plaintiffs' attorneys' fees in the amount of **$130,095.00** are reasonable.

It is therefore **ORDERED AND ADJUDGED** that Plaintiffs Cristiano Diniz and Antonio Thomas are entitled to attorneys' fees and litigation expenses in the amount of **$139,154.60** from Defendants Alpha OB GYN Group, P.C. and Dr. Daniel E. McBrayer, Sr.

IT IS SO ORDERED this 11th day of September, 2015.

**Leigh Martin May**
**United States District Judge**